Mohan PAPUDESU, M.D.

v.

**MEDICAL MALPRACTICE JOINT UN-DERWRITING ASSOCIATION OF RHODE ISLAND and John Doe, alias.**

No. 2009–364–Appeal.

Supreme Court of Rhode Island.

April 18, 2011.

Charles D. Wick, Esq., East Greenwich, for Plaintiff.

Michael G. Sarli, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON for the Court.

This appeal requires us to answer the following narrow but important question: what duties, if any, does an insurer owe to its insured before settling a medical malpractice claim when the malpractice policy at issue contains language that accords great discretion to the insurer with respect to the settlement of a claim?

The exact language at issue in this case is: "The [insurance] company may make such investigation and settlement of any claim or suit *as it deems expedient.*" (Emphasis added.) The plaintiff, Mohan Papudesu, M.D., appeals from the Superior Court's grant of summary judgment in favor of defendant insurer, Medical Malpractice Joint Underwriting Association of Rhode Island. Doctor Papudesu contends that the hearing justice erred (1) in ruling that the just-quoted "as it deems expedient" language constituted legally appropriate authority for the insurer to settle the malpractice claim in disregard of his wishes and (2) in granting summary judgment on that ground.

## I

### Facts and Travel

Doctor Papudesu was one of several defendants in a wrongful-death case in which there were allegations of medical malpractice having been committed. It is *not* necessary for present purposes to set forth all the details of that wrongful-death case. Suffice it to say (1) that it stemmed from the fact that a woman delivered a stillborn child in the eighth month of her pregnancy; and (2) that there was a disagreement as to whether or not Dr. Papudesu was "on call" during the time leading up to the stillborn delivery and as to whether or not he had received a call from a particular answering service concerning the medical needs of the woman who thereafter delivered the stillborn child.

In any event, it is undisputed (1) that, after a jury trial had commenced, the insurer settled the wrongful-death case against Dr. Papudesu for $500,000; and (2) that Dr. Papudesu objected to that settlement.[1] (It should be noted that Dr. Papudesu was represented by counsel for the insurer and also had retained counsel to protect him from a judgment in excess of the policy limits.) Doctor Papudesu's basis for objecting to the settlement was his confidence that he would prevail in the litigation and his belief that the fact of settlement would adversely affect his professional reputation and would cause the cost of his malpractice insurance to rise in the future.

Doctor Papudesu's objection to the settlement of the wrongful-death action by the carrier having been unavailing, on July 19, 2007, he filed suit against his insurer in the Superior Court for Providence County. Doctor Papudesu's complaint contained the following seven counts: (1) breach of contract; (2) negligence; (3) bad faith; (4) breach of fiduciary obligation; (5) civil conspiracy; (6) tortious interference with business relations and abuse of process;

1. The wrongful-death plaintiffs' initial settlement demand with respect to Dr. Papudesu was $1 million (the limit of Dr. Papudesu's medical malpractice liability policy).

and (7) malicious falsehood and commercial libel.

The defendant subsequently moved for summary judgment with respect to count one, arguing that it had satisfied its duties under the insurance contract; after a hearing, a justice of the Superior Court granted that motion by order entered September 3, 2008. The defendant thereafter moved for summary judgment on the remaining six counts, arguing that, absent a breach of contract, plaintiff's other allegations had no basis. On June 12, 2009, a different justice of the Superior Court granted defendant's second motion, and judgment was entered in favor of defendant with respect to all seven counts.[2] The plaintiff filed a timely notice of appeal on June 25, 2009.

On appeal, Dr. Papudesu argues that summary judgment should not have been granted with respect to count one of his complaint because (1) defendant had a duty to exercise its discretion under the "as it deems expedient" clause in good faith; and (2) the issue of breach of contract should have been decided by a jury rather than pursuant to a motion for summary judgment. Doctor Papudesu additionally argues (1) that, if summary judgment had not been erroneously granted on count one, the allegations contained in counts two, three, and four of his complaint[3] would have remained viable; and (2) that summary judgment should not have been granted with respect to those counts.

## II
### Standard of Review

■■■ We review Superior Court rulings with respect to summary judgment motions in a *de novo* manner. *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009); *Rodrigues v. DePasquale Building and Realty Co.*, 926 A.2d 616, 622 (R.I.2007). We apply the same standards as those used by the trial court, and we have stated that "summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Tavares ex rel. Guiterrez v. Barbour*, 790 A.2d 1110, 1112 (R.I.2002) (internal quotation marks omitted); *see also Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I.2001).

■■■ Moreover, since the instant case is contractual in nature, it should be noted that "the existence of ambiguity *vel non* in a contract is an issue of law to be determined by the court." *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I.2005); *see also Beacon Mutual Insurance Co. v. Spino Brothers, Inc.*, 11 A.3d 645, 648 (R.I.2011) ("[W]hether a contract is clear and unambiguous is a question of law."); *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I.1996) ("Whether the terms of a contract are clear and unambiguous is itself a question of law * * *."). Since an issue of law is involved, "the holding of a trial court * * * about the existence or non-existence of ambiguity in the terms of [a] contract is

**2.** We note that the judgment indicates that there were eight counts in plaintiff's complaint instead of seven; it appears that some documents submitted during the summary judgment proceedings set forth as two separate counts the allegation of tortious interference with business relations and the allegation of abuse of process that were both set forth in count six of plaintiff's original complaint.

**3.** In his brief to this Court, plaintiff concedes that counts five, six, seven, and eight of his complaint "may be dismissed."

freely reviewable by this Court." *Gorman*, 883 A.2d at 738 n. 8; *see also Haffenreffer v. Haffenreffer*, 994 A.2d 1226, 1231 (R.I.2010).

When a contract is unambiguous, we review its terms in a *de novo* manner. *Irene Realty Corp. v. Travelers Property Casualty Co. of America*, 973 A.2d 1118, 1122 (R.I.2009); *Rodrigues*, 926 A.2d at 623; *see Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000) ("Contract interpretation is a question of law; it is only when the contract terms are ambiguous that construction of terms becomes a question of fact.") (internal quotation marks omitted).

## III

### Analysis

■ An insurance policy is contractual in nature. *See Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1215 (R.I. 2004) ("This Court interprets the terms of an insurance policy according to the same rules of construction governing contracts."); *see also Beacon Mutual Insurance Co.*, 11 A.3d at 649; *Lynch*, 965 A.2d at 425; *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995).

■ Our first task is to determine whether the contract at issue is ambiguous. *See Vickers Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992). In making this determination, the Court should view the contract "in [its] entirety and give the contractual language its plain, ordinary and usual meaning." *A.F. Lusi Construction, Inc. v. Peerless Insurance Co.*, 847 A.2d 254, 258 (R.I.2004) (internal quotation marks omitted); *see also Cerilli v. New-*

*port Offshore, Ltd.*, 612 A.2d 35, 37–38 (R.I.1992).

■ It is true that there are times when a court must engage in what a poet called "the intolerable wrestle [w]ith words and meanings."[4] But this is no such time. As did the Superior Court, we consider the controverted sentence in the insurance policy to be unambiguous. Indeed, the sentence is of pellucid clarity; it vests full discretion in the insurer with respect to the issue of settlement. *See Gorman*, 883 A.2d at 739 n. 11 ("Under established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written.").

■ Discerning no ambiguity in the policy language, our judicial role becomes quite straightforward: the plain language of the policy is to be applied. *See Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I.1993) (indicating that, when the terms of an insurance policy are "clear and unambiguous, judicial construction is eclipsed and the contract must be applied as written"); *see also Vickers Antone*, 610 A.2d at 123; *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991); *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983). In fact, we do not actually *construe* an unambiguous contract; we simply consider the dictates of the plain language in the contract. *A.F. Lusi Construction, Inc.*, 847 A.2d at 258 ("A reviewing court has no need to construe contractual provisions unless those terms are ambiguous.").

We have examined the "as it deems expedient" language in the insurance contract at issue in this case, and we consider its meaning to be straightforward and readily understandable. Although that language clearly gives a great deal of dis-

---

4. T.S. Eliot, Four Quartets, "East Coker" pt. 2.

cretion to the insurer, that is precisely what the insurance contract provided for. *See Psaty & Fuhrman, Inc. v. Housing Authority of Providence,* 76 R.I. 87, 93, 68 A.2d 32, 36 (1949) ("The parties to a contract are free to agree upon any terms that are not illegal."); *see also F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 518 (R.I.1981) (noting "the general rule that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents"). *See generally Soares v. Langlois,* 934 A.2d 806, 810 (R.I.2007); *Manchester v. Pereira,* 926 A.2d 1005, 1012 (R.I.2007); *Westerly Hospital v. Higgins,* 106 R.I. 155, 160, 256 A.2d 506, 509 (1969).

We should not be understood as retreating from the principle that "an insurer doing business in Rhode Island is obligated to act in good faith in its relationship with its policyholders." *See Bibeault v. Hanover Insurance Co.,* 417 A.2d 313, 319 (R.I.1980). In our view, however, the instant case does not present facts that are inconsistent with that obligation "to act in good faith." The insurer fully performed its duties in accordance with the unambiguous language of the contract by defending the suit against Dr. Papudesu and by exercising its discretion in investigating and settling that suit in a manner which it deemed expedient and within the policy limits. The plaintiff protests that the defendant's authority to exercise its discretion under the "as it deems expedient" clause was limited by its duty to act in good faith such that the insurer was obligated to conduct a more vigorous investigation into the possible harm that settlement could cause to his interests. In accordance with settled law, however, "[w]e decline to read nonexistent terms or limitations into a contract." *See Pearson v. Pearson,* 11 A.3d 103, 109 (R.I.2011).

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.