CHEATERS, INC. et al.

v.

UNITED NATIONAL INSURANCE
CO. et al.

Nos. 2009–312–Appeal, 2009–313–Appeal.

Supreme Court of Rhode Island.

April 10, 2012.

Paul R. Crowell, Esq., Providence, for Plaintiff.

Faith A. LaSalle, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA JJ.

## OPINION

Justice ROBINSON, for the Court.

The plaintiff corporations, Cheaters, Inc. (Cheaters) and Cheaters Holding Corp. (the Holding Corp.), appeal[1] from the Superior Court's grant of summary judgment in favor of the defendant, United National Insurance Co. (United National).[2]

On appeal, the plaintiff corporations contend as follows: (1) that the hearing justice erred in holding that the "On–Premises Endorsement" in the insurance policy at issue applied to the "indemnification contract between Cheaters and the Holding Corp.;"[3] (2) that the hearing justice erred because her application of the On–Premises Endorsement renders the Additional Insured Endorsement an illusory contract; (3) that limiting liquor liability coverage to "on-premises losses only" violates public policy; and (4) that the policy's liquor liability exclusion does not preclude insurance coverage with respect to Cheaters'

1. The case before us involves two separate docket numbers. The case assigned the first docket number (No. 2009–312–A) is the appeal by Cheaters, Inc. and Cheaters Holding Corp. from the entry of summary judgment in favor of defendant United National Insurance Co. The case assigned the second docket number (No. 2009–313–A) is the cross-appeal by United National, which, as will become clear, we need not address (see Section III B, *infra*). These separately docketed cases have been consolidated by this Court.

2. In addition to United National, several other defendants were named in the pleadings in the Superior Court. However, the grant of summary judgment from which the plaintiff corporations have appealed involves only United National.

3. It is undisputed that the "indemnification contract" referenced in the text is an "insured contract," which is the term used and defined in the insurance policy at issue.

possible liability arising pursuant to "contracts of indemnification."

Accordingly, the plaintiff corporations urge this Court to vacate the entry of summary judgment and remand the case to the Superior Court for further proceedings.

For the reasons set forth in this opinion, we affirm the Superior Court's grant of summary judgment in favor of defendant United National.

# I

## Facts and Travel

### A

#### The Underlying Actions

In two separate civil actions commenced in the Superior Court for Providence County, the Administratrix of the Estate of Sean Waters (the plaintiff in the first underlying civil action) as well as Amber Seaton, Gennes Seaton, and Linda Stevens (the plaintiffs in the second underlying civil action) alleged that, on or about August 11 or August 12 of 2001, one William Powers attended a bachelor party at 245 Allens Avenue in Providence (the principal place of business of both Cheaters and the Holding Corp.). The plaintiffs in those civil actions alleged that, during his time on the premises of the Allens Avenue property, Mr. Powers was served alcoholic beverages at a point in time when he was "visibly intoxicated." They further alleged that Mr. Powers then left the Allens Avenue site in a commercial van or limousine, which took him to South Boston, Massachusetts. The plaintiffs further alleged that Mr. Powers thereafter operated a motor vehicle in a reckless or negligent fashion and collided with other vehicles in South Boston, resulting in the death of Sean Waters and injuries to the other named plaintiffs.

In both of the above-referenced civil actions, it is specifically alleged that both Cheaters and the Holding Corp. negligently and/or recklessly served alcoholic beverages to Mr. Powers.

### B

#### The Pertinent Provisions of the Insurance Policy

##### 1. The Additional Insured Endorsement

It is undisputed that, before the occurrence of the serious automobile accident in South Boston in August of 2001, United National had issued an insurance policy, by the terms of which Cheaters was the named insured and the Holding Corp. was named (by means of an "Additional Insured Endorsement") as an additional insured. It is noteworthy that the Additional Insured Endorsement pursuant to which the Holding Corp. became an additional insured reads in pertinent part as follows: "The naming of an additional insured will not increase our limit of liability."

##### 2. The Insured Contract Exclusion

The United National policy issued to Cheaters contains an exclusion for contractual liability. However, the policy goes on to state that the exclusion with respect to contractual liability "does not apply to liability for damages * * * [a]ssumed in a contract or agreement that is an '*insured contract*,' * * *." (Emphasis added.) The United National policy defines an "insured contract" as meaning: "That part of any other contract or agreement pertaining to your business * * * under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." The policy then defines "[t]ort liability" as meaning "a liability that would be imposed

by law in the absence of any contract or agreement."

At all relevant times, the Holding Corp. had a contractual agreement to furnish equipment and certain trade fixtures or improvements to Cheaters at the 245 Allens Avenue premises in Providence. As part of that contract, Cheaters assured the Holding Corp. that it would indemnify it and defend it against any and all claims related in any way to Cheaters' activities and business performed at the premises in Providence. As we have noted, it is undisputed that the indemnification agreement between Cheaters and the Holding Corp. is part of an "insured contract" that falls within the definition of that term in the United National policy.

### 3. The On–Premises Endorsement

The United National policy at issue contains an On–Premises Endorsement, which explicitly limits coverage to "on-premises losses only," and it defines the premises as "245 Allens Avenue, Providence, Rhode Island."

### 4. The Liquor Liability Exclusion

Additionally, the policy's liquor liability exclusion states that the insurance does not provide for the following:

" 'Bodily injury' or 'property damage' for which any insured may be held liable by reason of:

"(1) Causing or contributing to the intoxication of any person;

"(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

"(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages."

### C
### The Instant Action

Cheaters and the Holding Corp. have demanded that, pursuant to the insurance policy issued by United National to Cheaters, United National must defend and indemnify the Holding Corp. with respect to the two underlying civil actions that were filed in the wake of the collision in South Boston in August of 2001.

On the basis of both the On–Premises Endorsement and the liquor liability exclusion, United National has disclaimed any responsibility for the defense and/or indemnification of the Holding Corp.

In view of the insurer's refusal to defend and/or indemnify, on December 31, 2004, the plaintiff corporations filed a complaint in the Superior Court seeking a declaratory judgment as to the rights of the parties under the terms of the United National policy. In their complaint, plaintiffs sought a specific declaration by the court that the Holding Corp. is entitled to its costs of defense and complete indemnification pursuant to what it contended is the plain language of the United National policy. The plaintiffs argued in the alternative that, if the court should find the United National policy to be ambiguous, the policy should be construed against the insurer and in a manner favorable to plaintiffs as a matter of law. In addition, plaintiffs requested that the court declare that "the purported limitation of bodily injury liability coverage to the [p]remises (245 Allens Avenue, Providence, R.I.) is void under the circumstances" and as being against public policy.

In due course, plaintiffs and United National filed cross-motions for summary judgment.

In its motion for summary judgment, United National contended (1) that the On–Premises Endorsement was clear and

unambiguous and limited coverage only to bodily injury or property damage that occurs on the premises; (2) that the Holding Corp., as an additional insured, can take no greater coverage than the named insured; and (3) that the liquor liability exclusion was valid.[4]

In their cross-motion and opposition to defendant's motion, plaintiffs averred (1) that the On–Premises Endorsement is void as being against public policy "because it would unduly restrict the scope of coverage that Cheaters[ ] and the Holding Corp. *reasonably* expected to receive (*i.e.*, coverage for Cheaters' liabilities to the Holding Corp., notwithstanding exclusion of coverage for Cheaters' direct liability to a third party plaintiff);" (2) that, if the On–Premises Endorsement were held to apply to the Holding Corp.'s liability, it would render the Additional Insured Endorsement illusory "because that endorsement would provide no greater protection than the Holding Corp. would have by virtue of an equitable right of indemnification against Cheaters (who [*sic* ] would be insured);" and (3) that the liquor liability exclusion is inapplicable to the Holding Corp.

The Superior Court held a hearing on both motions on June 10, 2008. After considering the arguments of the parties, the hearing justice ruled that Cheaters was not entitled to either a "defense" or "coverage" under the United National policy. The hearing justice proceeded to state that, with respect to the Holding Corp., the "additional insured" language was clear and unambiguous. She explained that, "[i]f the additional insured is entitled to contribution or indemnification as a result of a contract between it and the named insured, United National's obligation to the additional insured is limited to that which the contract provided for in the way of indemnification." The hearing justice further noted that certain language in the Additional Insured Endorsement states that "the naming of an additional insured will not increase the limits of United National's liability."

Addressing the On–Premises Endorsement, the hearing justice ruled that, in view of that endorsement, coverage under the policy is limited to bodily injury occurring at the premises located at 245 Allens Avenue. The hearing justice concluded that, in order to find liability for bodily injury occurring elsewhere, she would "have to stray from the plain language of the policy." The hearing justice further rejected plaintiffs' argument that "the endorsement is void for public policy reasons or that it renders the Additional Insured [E]ndorsement illusory;" she explained that, although the endorsement confines the coverage to bodily injury in a limited geographical area, it does not unconscionably restrict the coverage extended.

The hearing justice proceeded to grant United National's motion for summary judgment on the grounds that the On–Premises Endorsement applied. She then denied United National's motion in all other respects.[5]

4. Since we are not reaching the issue of the liquor liability exclusion, we shall not summarize the contentions of the parties at the summary judgment stage concerning that exclusion.

5. At the time that the hearing justice granted summary judgment for United National, there was confusion as to whether there was a duty to defend (distinct from the duty to indemni-

fy). Accordingly, on April 28, 2009, the hearing justice heard a second motion for summary judgment brought by United National, wherein it contended that it had no duty to defend. The hearing justice granted that second motion because, although she recognized that the analysis concerning the duty to defend is different from the analysis relative to the duty to indemnify, she concluded that, as a result of the On–Premises Endorsement,

The plaintiffs timely appealed the judgment of the Superior Court granting United National's motion for summary judgment.

## II

## Standard of Review

■ We review the granting of a motion for summary judgment in a *de novo* manner, and we apply the same standards and rules as did the hearing justice. *Empire Acquisition Group, LLC v. Atlantic Mortgage Co.*, 35 A.3d 878, 882 (R.I.2012); *see also Nunes v. Meadowbrook Development Co.*, 24 A.3d 539, 542 (R.I.2011); *Beacon Mutual Insurance Co. v. Spino Brothers, Inc.*, 11 A.3d 645, 648 (R.I.2011); *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009).

We have often articulated the principle that "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I.2001); *see also Employers Mutual Casualty Co. v. Arbella Protection Insurance Co.*, 24 A.3d 544, 553 (R.I.2011); *Lynch*, 965 A.2d at 424.

■ By contrast, "[w]hen a genuine issue of fact exists * * * the trial justice must not decide the issue, and in such an instance summary judgment is not an appropriate remedy." *DeMarco v. Travelers*

*Insurance Co.*, 26 A.3d 585, 605 (R.I.2011) (alteration and omission in original) (internal quotation marks omitted); *see also Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 58 (R.I.2010) (concluding that summary judgment was not appropriate when there was a genuine issue of material fact); *Rodrigues v. DePasquale Building and Realty Co.*, 926 A.2d 616, 622 (R.I. 2007). *See generally Mitchell v. Mitchell*, 756 A.2d 179, 185 (R.I.2000).

■ In view of the fact that this case requires us to delve into the meaning of contractual language,[6] it should be noted that "the existence of ambiguity *vel non* in a contract is an issue of law to be determined by the court." *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I.2011) (internal quotation marks omitted); *see also Beacon Mutual Insurance Co.*, 11 A.3d at 648 (stating that "whether a contract is clear and unambiguous is a question of law"); *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I.1996) (stating that "[w]hether the terms of a contract are clear and unambiguous is itself a question of law"). Since an issue of law is involved, this Court will review the conclusions of a trial court concerning the existence (*vel non*) of contractual ambiguity in a *de novo* manner. *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083 (R.I.2010); *see also Beacon Mutual Insurance Co.*, 11 A.3d at 649.

"[t]he allegations plainly are outside the scope of the risks covered by the policy and, therefore, the carrier has no duty to defend."

6. It is well established that, in this Court's review of the terms of an insurance policy, we apply the rules for the construction of contracts. *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I.1995); *see*

also *Henderson v. Nationwide Insurance Co.*, 35 A.3d 902, 906 (R.I.2012); *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083 (R.I.2010); *Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1215 (R.I.2004).

■ We review the terms of an unambiguous contract in a *de novo* manner. *Papudesu*, 18 A.3d at 498; *see also Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000); *Clark–Fitzpatrick, Inc./ Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I.1994) ("Contract interpretation is a question of law; it is only when contract terms are ambiguous that construction of terms becomes a question of fact.").

## III

## Analysis

## A

### The Applicability of the On–Premises Endorsement

#### 1. The Alleged Ambiguity of the Endorsement

On appeal, plaintiffs contend that the United National policy contains an ambiguity which could lead a person to conclude that the On–Premises Endorsement does not apply to "insured contracts"[7] and that, therefore, the Holding Corp. is entitled to coverage in spite of the limiting language of the On–Premises Endorsement.

The rationale underlying plaintiffs' contention is the following: (1) "an obligation to indemnify exist[ed] irrespective of [where] the bodily injury or property damage [occurred]," and (2) "the On–Premises Endorsement modifie[d] the COVERAGES section of the policy, and coverage for 'insured contracts' ha[d] been held to be found in an *exclusion, not* in the primary COVERAGES section." (All emphasis in original.)

■ We are first called upon to determine whether the policy at issue is ambig-

uous. *Vickers Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992). To make this determination, "we read the policy in its entirety, giving words their plain, ordinary, and usual meaning." *Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I. 1993); *see also Bliss Mine Road Condominium Association*, 11 A.3d at 1083; *Lynch*, 965 A.2d at 425; *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I.2004). However, in carrying out that review of the policy language, we are mindful that we should "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995); *see also Bliss Mine Road Condominium Association*, 11 A.3d at 1083; *Beacon Mutual Insurance Co.*, 11 A.3d at 649.

After having carefully considered the instant United National policy, it is our opinion that the On–Premises Endorsement contained therein is unambiguous. Indeed, the policy's language is blunt and straightforward: coverage is limited to "bodily injury" or "property damage" which occurs only at the specified location—*viz.*, "245 Allens Avenue, Providence, Rhode Island."[8] *See Papudesu*, 18 A.3d at 498 ("[T]here are times when a court must engage in * * * the intolerable wrestle [w]ith words and meanings. But this is no such time." (second alteration in original) (footnote and internal quotation marks omitted)).

#### 2. Construction of the On–Premises Endorsement and the Insured Contract Exclusion

■ Having determined that the On–Premises Endorsement is unambiguous, it becomes our duty to apply the plain lan-

**7.** *See* Section I B 2, *supra.*

**8.** *See* Section I B 3, *supra.*

guage of the policy to the pertinent facts. *See Papudesu*, 18 A.3d at 498 ("[W]e do not actually *construe* an unambiguous contract; we simply consider the dictates of the plain language in the contract."); *Aetna Casualty & Surety Co.*, 633 A.2d at 686 (stating that, when the terms of an insurance policy are "clear and unambiguous, judicial construction is eclipsed and the contract must be applied as written").

The plaintiffs urge this Court to apply the plain language in such a manner that the On–Premises Endorsement does not apply to the insured contract exclusion (the contract between Cheaters and the Holding Corp. being within said exclusion); plaintiffs' interpretation would result in there being broader coverage for an insured contract (or an additional insured) than the coverage that the policy accords to the original insured itself. That interpretation would permit the Holding Corp. to be indemnified under the United National policy in the instant case—while Cheaters, the original insured, would enjoy no such coverage. We decline to read the pertinent language in that manner.

■ It is the general rule that an additional insured, such as the Holding Corp., "enjoys the full benefits of the policy, despite any restrictions contained in a separate contractual agreement with the insured, *as well as being subject to all policy exclusions*." 9 Steven Plitt et al., *Couch on Insurance* § 126:7 at 126–29 (3d rev. ed. 2008) (emphasis added); *see also Bott v. J.F. Shea Co.*, 299 F.3d 508, 511 (5th Cir.2002) (stating that, if a party "was an

additional insured, it would still be subject to the exclusions in the policy"). Accordingly, an additional insured not only reaps the benefits of the insured's policy, but it also bears the burden of the exclusions.

■ It is further our view that, if the insurer intended to exclude indemnification agreements within insured contracts from the substantial restriction on coverage that the On–Premises Endorsement constitutes,[9] the policy would have expressly so stated. *See Maroney v. New York Central Mutual Fire Insurance Co.*, 5 N.Y.3d 467, 805 N.Y.S.2d 533, 839 N.E.2d 886, 889 (2005) (stating that "[i]f the insurer intended to limit [an] exclusion * * * it could have done so explicitly, as it does in the very same policy's * * * provisions"); *see also Chimbay v. AvalonBay Communities, Inc.*, 742 F.Supp.2d 265, 283 (E.D.N.Y.2008) (holding that if an insurer "intended to exclude 'insured contracts' from the provision denying coverage for injuries to employees, it could have expressly stated as such"). The policy at issue in the instant case does not express an intention to exclude "insured contracts" from the exclusions that are set forth in the policy. Instead, it will be recalled that the Additional Insured Endorsement that extends coverage to the Holding Corp. specifically states that "[t]he naming of an additional insured will not increase our limit of liability." It is therefore clear to us that the function of that endorsement was to "add insureds rather than to alter the contract with the original insured."

---

9. In viewing the On–Premises Endorsement, we remain mindful of the following rule:

"It is the general rule that an endorsement or rider attached to an insurance policy becomes and forms a part of the contract; that the policy and the endorsement or rider shall be construed together; and that where the provisions in the body of the policy and those in the endorsement or

rider are in irreconcilable conflict[,] the provisions contained in the endorsement or rider will prevail over those contained in the body of the policy." *Farmers Ins. Exchange v. Ledesma*, 214 F.2d 495, 498 (10th Cir.1954) (quoted with approval in *Children's Friend & Service v. St. Paul Fire & Marine Insurance Co.*, 893 A.2d 222, 232 (R.I.2006)).

*See Great West Casualty Co. v. Mayorga,* 342 F.3d 816, 817 (7th Cir.2003). *See generally Pearson v. Pearson,* 11 A.3d 103, 109 (R.I.2011) ("We decline to read nonexistent terms or limitations into a contract.").

In their written and oral arguments, plaintiffs have advocated for a totally contrary principle; they would have this Court rule that the Additional Insured Endorsement (as well as the insured contract exclusion) altered the contract with the original insured by conferring broader coverage on the additional insured than on the original insured itself. However, it is a basic principle that, when we review an insurance policy, we "consider[ ] the policy in its entirety and [will] not establish ambiguity by viewing a word in isolation or by taking a phrase out of context." *Bliss Mine Road Condominium Association,* 11 A.3d at 1083 (internal quotation marks omitted); *see also Smith v. United States,* 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("Language, of course, cannot be interpreted apart from context."); *In re Brown,* 903 A.2d 147, 150 (R.I.2006) ("In our view, * * * the 'plain meaning' approach is not the equivalent of myopic literalism."). Judge Posner of the United States Court of Appeals for the Seventh Circuit has memorably described as follows an approach to contract interpretation that focuses on "a snippet of contractual language taken out of context:"

> "That way madness lies. Suppose you order a Cosmopolitan in a bar, and the bartender gives you a copy of the woman's magazine and insists that you pay

for it; can he appeal to literal meaning to defeat your contention that it is not what you agreed to?" *Great West Casualty Co.,* 342 F.3d at 818.[10]

 We therefore decline to read the policy in such a myopic manner; rather, we adhere to the principle that "exclusions should be read *seriatim,* not cumulatively[;] * * * [t]here is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another." [11] *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 795 (1979) (emphasis added) (internal quotation marks omitted); *see also Bond Brothers, Inc. v. Robinson,* 393 Mass. 546, 471 N.E.2d 1332, 1334 (1984) ("We flatly reject the concept that, because [an] exclusion * * * excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an objectively reasonable expectation of coverage, when it is confronted with another explicit exception.").

 In our reading of the insurance policy at issue, we have been mindful of the principle that "exclusion clauses do not grant coverage; rather, *they subtract from it.*" *Kemper National Insurance Cos. v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 872 (Ky.2002) (emphasis added) (internal quotation marks omitted); *see also Continental Casualty Co. v. Pittsburgh Corning Corp.,* 917 F.2d 297, 300 (7th Cir. 1990) ("[A]n exclusion from insurance coverage cannot create coverage."); *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67

---

**10.** Judge Posner has characterized the interpretation of an insurance contract as being, "like other legal methodologies, * * * at bottom a practical art." *Continental Casualty Co. v. Pittsburgh Corning Corp.,* 917 F.2d 297, 301 (7th Cir.1990).

**11.** The rule that exclusions are to be read *seriatim* evokes in our mind the image of a commuter train on its evening run. Just as some passengers depart at each stop and thereby subtract from the total number of passengers on the train, so each exclusion in a policy of insurance exists in and by itself without reference to any other.

Haw. 203, 684 P.2d 960, 965 (1984) (stating that extending the scope of an insurance policy based on an exception to an exclusion "would run directly counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant it" (emphasis in original) (internal quotation marks omitted)); *Weedo,* 405 A.2d at 795 (noting "the basic principle that exclusion clauses *subtract* from coverage rather than grant it" (emphasis in original)); *Raymond Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 5 N.Y.3d 157, 800 N.Y.S.2d 89, 833 N.E.2d 232, 235 (2005) ("[A]n exclusion from insurance coverage cannot create coverage." (internal quotation marks omitted)).

Reading the instant policy in its entirety, it is our view that the On–Premises Endorsement applies to the insured contract between Cheaters and the Holding Corp. For that reason, there is no coverage with respect to the underlying civil actions because the collision that gave rise to those civil actions took place in South Boston, Massachusetts—not on the premises at 245 Allens Avenue in Providence, Rhode Island. Accordingly, we hold that the hearing justice did not err in granting summary judgment in favor of United National based on the On–Premises Endorsement.[12]

B

### The Liquor Liability Exclusion

In the instant matter, due to the fact that we have held that coverage is barred by the On–Premises Endorsement, we need not and shall not reach the contention that the liquor liability exclusion also bars coverage.[13] *See Furlan v. Farrar,* 982 A.2d 581, 585 (R.I.2009); *see also PDK Laboratories Inc. v. United States Drug Enforcement Administration,* 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part) (stating that "the cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more").

IV

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's grant of summary judgment in favor of the defendant, United National Insurance Co. The record in this case may be returned to that tribunal.

12. We perceive no merit in the plaintiff corporations' argument that the Additional Insured Endorsement may constitute an illusory contract. The plain fact is that the Additional Insured Endorsement merely increases the number of insured entities.

13. We deem the plaintiff corporations' argument that limiting liquor liability coverage to "on-premises losses only" violates public policy to be without merit in light of our conclusion articulated in the text that the On–Premises Endorsement applies to the insured contract and the fact that Cheaters opted not to purchase liquor liability (as well as off-premises liability) insurance—which choice is reflected unambiguously in the policy. *See Rodrigues v. DePasquale Building and Realty Co.,* 926 A.2d 616, 624 (R.I.2007) (stating that "[i]t is a basic tenet of contract law that the contracting parties can make as good a deal or as bad a deal as they see fit" (alteration in original) (internal quotation marks omitted)); *Employers' Fire Insurance Co. v. Baker,* 119 R.I. 734, 741, 383 A.2d 1005, 1008 (1978) (declining to extend uninsured motorist coverage to a motorcycle that was involved in an accident with an uninsured motorist because the insured "chose not to include coverage of her motorcycle within her [insurance] policy").