Joseph IOZZI et al.

v.

CITY OF CRANSTON et al.

Nos. 2010–87–Appeal, 2010–112–
Appeal, 2010–113–Appeal.

Supreme Court of Rhode Island.

July 5, 2012.

Keven A. McKenna, Esq., Providence, for Plaintiffs.

Kevin N. Rolando, Esq., for Defendant Peerless Insurance Company.

James A. Ruggieri, Esq., Providence, for Defendant Triton Ocean State, LLC & U.S. Filter Operating Services, Inc.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

These cases came before the Supreme Court on May 3, 2012, as a consolidated appeal, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

## I

### Facts and Travel

The month of October 2005 saw more rain than any single month in Rhode Island's recorded history up to that time, totaling in excess of fifteen inches. In particular, the state recorded nearly nine inches of precipitation between the 13th and 15th of that month. At the time,

Joseph and Josephine Iozzi (Iozzis or plaintiffs) owned a home located at 91 Amanda Street, Cranston, Rhode Island. On October 15, 2005, this excessive rainfall overwhelmed the sewer system servicing the Iozzis's home, causing water and sewage to back up and enter their basement, resulting in extensive damage to their home and personal property.

On November 14, 2006, plaintiffs filed suit in Providence County Superior Court, seeking declaratory relief and compensatory damages from Triton Ocean State, LLC (Triton); U.S. Filter Operating Services, Inc. (Veolia);[1] and Peerless Insurance Company (Peerless).[2] The complaint alleged that Triton and Veolia were jointly and severally liable for negligently "operating, maintaining and repairing the sewer disposal system" in the city.[3] As to Peerless, the complaint alleged that it was liable for breach of contract for rejecting plaintiffs' claim for damages under their homeowner's insurance policy (the homeowner's policy).

### A

### Peerless's Motion for Summary Judgment

On March 21, 2008, Peerless filed a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, arguing that the language in the homeowner's policy was clear and unambiguous and excluded coverage for the claims plaintiffs made. In response, plaintiffs filed an objection to Peerless's motion on April 2, 2008, and a memoran-

---

1. U.S. Filter is now known as Veolia Water North American Operating Services, LLC, and in this opinion it shall be referred to as "Veolia."

2. The complaint also named the City of Cranston as a defendant, but the city is not involved in the present appeal.

3. The record indicates that, in 1997, Triton entered into a lease and service agreement (LSA) with the City of Cranston to operate and maintain its sewer disposal system. Triton later subcontracted its obligations under the LSA with Professional Services, Inc., which, in turn, entered into an assignment and assumption agreement in 2001 with Veolia.

dum supporting their objection on June 4, 2008. After a hearing on the motion on June 10, 2008, a justice of the Superior Court granted Peerless's motion for summary judgment as well as its motion for entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The plaintiffs filed a notice of appeal on June 18, 2008,[4] and final judgment was entered on July 17,2008.

## B

### Triton & Veolia's Motion for Summary Judgment

On June 11, 2009, Triton and Veolia filed a joint motion for summary judgment,[5] arguing that neither of them had a contractual or common-law responsibility to plaintiffs for the damage to their property because the LSA relieved them of responsibility for the damage and because the flooding that caused plaintiffs' damages was caused by an "Act of God." In response, plaintiffs filed an objection on June 18, 2009. It appears from the record that a hearing on the motion was conducted on August 11, 2009, and continued for further hearing, but no transcripts of either hearing have been provided by plaintiffs pursuant to Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure. The record also indicates that on September 8, 2009, a different Superior Court justice granted Triton and Veolia's motion for summary judgment. On that same date, a judgment was entered in favor of Triton and Veolia; plaintiffs filed a notice of appeal on September 30, 2009.

On October 27, 2009, Triton and Veolia filed a motion to dismiss plaintiffs' notice of appeal, asserting that it was untimely because it was filed two days after the twenty-day time period pursuant to Rule 4 of the Supreme Court Rules of Appellate Procedure,[6] to which the plaintiffs objected. At a hearing on November 25, 2009, the same Superior Court justice granted Triton and Veolia's motion and dismissed plaintiffs' notice of appeal as untimely filed.

With their notice of appeal dismissed, plaintiffs attempted a different approach by questioning the validity of the September 8, 2009 judgment in favor of Triton and Veolia. On November 27, 2009, plaintiffs filed a motion to vacate the September 8, 2009 judgment, arguing that the prior judgment failed to comport with Rule 54(b) because it did not contain an explicit determination by the justice that there was no just reason for delay. *See Tessier v. Ann & Hope Factory Outlet Inc.*, 113 R.I. 921, 921, 320 A.2d 616, 616 (1974) (mem.) (holding that Rule 54(b) "permits the entry of a final judgment as to one or more but fewer than all the parties * * * only after an express determination by the [Superior Court] justice that there is no just reason for delay and an express direction that judgment may enter").

After Triton and Veolia objected, a hearing on the matter was held on December 10, 2009, in which the same Superior Court justice granted plaintiffs' motion and vacated the September 8, 2009 judgment.

---

**4.** This Court has previously stated that when "an appeal has been prematurely filed, [this Court] will 'treat the appeal as if it had been timely filed after judgment was entered.'" *Arnold Road Realty Associates, LLC v. Tiogue Fire District*, 873 A.2d 119, 125 n. 4 (R.I. 2005) (quoting *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 n. 9 (R.I. 2003)).

**5.** In addition to its motion for summary judgment, Triton and Veolia also sought an entry of final judgment pursuant to Rule 54(b).

**6.** Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure requires appeals in civil cases to be filed "within twenty (20) days of the date of the entry of the judgment, order, or decree appealed from."

The justice also directed that a revised "[j]udgment should be entered to reflect that [Rule] 54(b) certification was, in fact, granted" and that it should reflect her prior finding that there was no just reason for delay. On December 15, 2009, a revised final judgment reflecting her direction was entered in favor of Triton and Veolia. The plaintiffs filed a notice of appeal of this revised judgment on January 20, 2010.

## II

## Standard of Review

■ "We review a [Superior Court] justice's grant of summary judgment in a *de novo* manner." *Nunes v. Meadowbrook Development Co.*, 24 A.3d 539, 542 (R.I. 2011) (citing *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I. 2011)). "In such a review, this Court applies the same standards as the motion justice, and we will affirm summary judgment 'if, when viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Henderson v. Nationwide Insurance Co.*, 35 A.3d 902, 905 (R.I.2012) (quoting *Trust of McManus v. McManus*, 18 A.3d 550, 552 (R.I.2011)).

## III

## Discussion

## A

## Triton & Veolia's Revised Judgment

■ We will first address plaintiffs' appeal from the December 15, 2009 judgment in favor of Triton and Veolia. However, before we can address the merits of this appeal, we must first determine whether plaintiffs' appeal was timely. As briefly mentioned *supra*, in accordance with Rule 4(a), a notice of appeal must be filed "within twenty (20) days of the date of the entry of the judgment." It is well settled that "the time specified in Rule 4(a) is mandatory, and that once the prescribed time has passed there can be no review by way of appeal." *Wachovia Bank v. Hershberger*, 911 A.2d 278, 279–80 (R.I.2006) (mem.) (quoting *Craveiro v. Craveiro*, 773 A.2d 896, 899 (R.I.2001)).

■ Here, after the Superior Court justice vacated the September 8, 2009 judgment, a new and valid final judgment was entered on December 15, 2009. However, plaintiffs did not file their notice of appeal until January 20, 2010. Because plaintiffs did not file a notice of appeal within twenty days from the date judgment was entered, the appeal is untimely and is not properly before this Court. "Our appellate jurisdiction may not properly be invoked when an appeal is filed more than twenty days subsequent to the entry of the judgment of which review is being sought." *Wachovia Bank*, 911 A.2d at 280 (quoting *Title Investment Co. of America v. Fowler*, 504 A.2d 1010, 1011–12 (R.I.1986)). Accordingly, we decline to reach the merits of the issues raised, and we affirm the underlying judgment pertaining to Triton and Veolia.[7] *See DiLibero v. State*, 996 A.2d 599, 601 (R.I.2010) (mem.) (holding that "this Court will not entertain untimely appeals.").

---

7. After a prebriefing conference before a justice of this Court on May 24, 2011, plaintiffs were ordered to file a supplemental statement within twenty days that "address[ed] the question of whether or not the appeal from the December 15, 2009 judgment was timely." We note that not until the morning of oral argument before this Court on May 3, 2012, nearly a year later, did plaintiffs file a supplemental statement, which consisted of a single paragraph. Because this supplemental statement was not submitted to this Court in a timely manner, we will not consider it.

## B

### Peerless's Judgment

 Moving now to plaintiffs' appeal of the judgment in favor of Peerless, the issue before us is one of contract interpretation. "This Court reviews a motion justice's interpretation of an insurance policy *de novo.*" *Metro Properties, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 934 A.2d 204, 208 (R.I.2007) (citing *Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I. 2003)). We have also stated previously that "[a]n exclusion from coverage in a homeowner's insurance policy must be clear and unambiguous." *American Commerce Insurance Co. v. Porto,* 811 A.2d 1185, 1192 (R.I.2002) (quoting *Campbell v. Norfolk & Dedham Mutual Fire Insurance Co.,* 682 A.2d 933, 935 (R.I.1996)). "When the terms of an insurance policy are unambiguous, this Court will give the words, when read in conjunction with the entire policy, their plain and ordinary meaning." *Metro Properties,* 934 A.2d at 208 (citing *Zarrella,* 824 A.2d at 1259). "If a policy contains ambiguous terms that are capable of more than one reasonable meaning, we will strictly construe the policy in favor of the insured and against the insurer." *Id.* (citing *Mallane v. Holyoke Mutual Insurance Co. in Salem,* 658 A.2d 18, 20 (R.I.1995)).

 In the case at bar, after the basement of their home was flooded, plaintiffs filed a claim under their homeowner's policy with Peerless. In a letter dated November 8, 2005, Peerless denied their claim, based in large part on an exclusion in the homeowner's policy that precluded coverage for losses caused directly or indirectly by water. This provision reads in pertinent part:

"SECTION I—EXCLUSIONS

"**1.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

"\* \* \*

"\* \* \*

"**c. Water Damage,** meaning:

"(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

"(2) Water which backs up through sewers or drains or which overflows from a sump; or

"(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."

After plaintiffs filed suit for breach of contract, Peerless filed a motion for summary judgment, arguing that language in the homeowner's policy was clear and unambiguous and that it excluded coverage for the claims made by plaintiffs. At a hearing on the motion, a Superior Court justice found the policy language to be clear and unambiguous; and, based on that language, granted Peerless's motion for summary judgment.

On appeal, plaintiffs contend that summary judgment in favor of Peerless should not have been granted because the homeowner's policy is so "technically contradictory, and ambiguous, that it leaves numerous issues of fact to be determined at trial[.]" According to plaintiffs' rather convoluted argument on appeal, they suggest that ambiguity is present in the homeowner's policy because there is no exclusion for water damage in a separate section entitled "PERILS INSURED AGAINST[.]" Instead, the water-damage

exclusion is included in the next provision entitled "**EXCLUSIONS**[.]" We disagree with plaintiffs' contention. A review of the homeowner's policy leads this Court to conclude, as did the Superior Court justice, that the policy language, including the exclusion at issue, is clear and unambiguous. Indeed, both sections can reasonably be read together. The earlier section, entitled "**PERILS INSURED AGAINST**[,]" delineates what is covered, subject to certain caveats; while the latter section delineates blanket exclusions that apply to the entire policy.

The plaintiffs also contend on appeal that the homeowner's policy, while excluding damage done by water, does not explicitly exclude damage caused by sewage or wastewater. However, the homeowner's policy expressly excludes water damage caused from "[w]ater which backs up through sewers[,]" which would incontrovertibly include sewage. Furthermore, the record indicates that heavy rain overloaded the sewer system, causing water and raw sewage [8] to enter the home from a toilet that was located in the basement. The damage inflicted upon plaintiffs' property was undoubtedly caused by a mixture of water and sewage, which, in our opinion, the homeowner's policy omits from coverage. Thus, the damage sustained by plaintiffs is excluded by the plain language of the homeowner's policy.

Although we consider the foregoing exclusion provisions dispositive, we address the plaintiffs' assertion that a genuine issue of material fact still exists as to whether their property was damaged as a result of an act of God or by human negligence. To support this argument, the plaintiffs invoke *Shelby Insurance Co. v. Northeast Structures, Inc.*, 767 A.2d 75, 77 (R.I.2001), in which this Court held that "the grant of summary judgment [was] inappropriate" because there remained a question, in that case, of whether "the collapse [of a structure] was caused by an act of God—such as high winds—rather than faulty work done on the structure[.]" Our review of the record in this case reveals that this issue was not raised by either party during the Superior Court proceedings.[9] It is well settled that in line with our "raise-or-waive" rule, this Court "will not address an issue that was not presented to the trial court." *Waterman v. Caprio*, 983 A.2d 841, 847–48 (R.I.2009) (citing *State v. Swindell*, 895 A.2d 100, 105 (R.I.2006)). Accordingly, because the plaintiffs failed to raise this argument before the Superior Court justice for her consideration, we deem it to be waived.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgments of the Superior Court. The record may be remanded to the Superior Court.

---

8. Although plaintiffs' argument on appeal only mentions damage caused by "raw sewerage" entering into the basement, plaintiffs' original complaint acknowledged that plaintiffs' basement "was filled with sewerage and water, causing damage to their home."

9. While it has no bearing on this matter as it relates to Peerless, we note that Triton and Veolia did raise the issue of non-liability because of an act of God in their answer as an affirmative defense.