HENRY O. PEABODY *et al. vs.* ALFRED E. TENNEY *et als.*

A bill in equity by creditors to enforce the trusts of an assignment for the benefit of creditors is not demurrable on the ground that the complainants have a full and adequate remedy at law, trusts being peculiarly the subjects of equitable cognizance.

Such a bill is defective if it do not allege that the complainants have presented their claims to the assignee, as required by Pub. Laws R. I. cap. 631, § 2, or

that they have proved their claims in accordance with the proviso thereof.  It is not enough to aver that the assignee refuses to recognize the complainants as creditors entitled to the benefit of the assignment.

In 1882 an insolvent corporation put its affairs into the hands of a committee of creditors to adjust and settle the same.  The corporation was compelled to do this, or be forced into making a general assignment for its creditors.  The committee paid dividends from time to time on account of the indebtedness of the corporation, amounting in all to fifty per cent. of the indebtedness.  The last dividend was paid Nov. 30, 1885.  ·Just before the expiration of six years from the date of payment of the last dividend, the corporation, in consequence of attachments placed upon its property by certain of its creditors, executed an assignment for the benefit of creditors, in accordance with Pub. Stat. R. I. cap. 237.

*Held,* that the act of the corporation in putting its affairs into the hands of the committee of creditors in 1882 was not done under duress.

*Held,* further, that the dividends paid by the committee of creditors were the voluntary payments of the corporation, and operated as part payments to take the debts on account of which they were paid, out of the statute of limitations.

BILL IN EQUITY to enforce the trusts of assignment for the benefit of creditors.  Heard on demurrer, and subsequently on bill and answer.

The complainants are simple contract creditors of the Providence Tool Company, a corporation late doing business in the city of Providence, and sue in behalf of themselves and all other creditors of the company similarly situated.  The respondents are the assignee of the Providence Tool Company and the judgment creditors of said company.

*November* 27, 1893.  PER CURIAM.  This is a bill to enforce the trusts of an assignment for the benefit of creditors.  The complainants allege that the respondent assignee refuses to recognize them as creditors entitled to the benefit of the assignment.  The respondent, the American National Bank, has demurred to the bill, assigning as grounds of demurrer, that· the complainants have a full, complete and adequate remedy at law; and that Pub. Laws R. I. cap. 631,. as amended by Pub. Laws R. I. cap. 820, has provided the exclusive mode in which a creditor of an insolvent debtor shall proceed to test the validity of his claim, in case such claim has been disallowed by the assignee of the debtor ; and that the complainants do not allege in their bill that they have proceeded in accordance with the statute.

Trusts are peculiarly the subjects of equitable cognizance,

and we do not think that the bill is demurrable on the ground that the complainants have a full and adequate remedy at law.[1]  We think, however, that the bill is defective in not alleging that the complainants have presented their claims to the assignee as required by § 2 of said chapter 631,[2] or that they have proved their claims in accordance with the proviso of said section.

*Demurrer sustained.*

The complainants having amended their bill, two of the respondents, the assignee and National Exchange Bank, filed answers.  The case was then heard on bill and answers.

*March* 2, 1894.  TILLINGHAST, J.  This is a bill to enforce the trusts of an assignment for the benefit of creditors.  The question raised upon the pleadings is whether or not the complainants have any enforceable claims against the estate in the hands of the assignee.  The facts as shown by the bill and answer, in so far as they are material to the decision of the question, are these, viz.:  In 1882 the Providence Tool Company was indebted to divers creditors to an amount aggregating the sum of $1,129,684.06, and being financially embarrassed, a committee of creditors was appointed to adjust and settle up the affairs of the company, which committee, as the bill alleges, acted as the agents of said company, and with its acquiescence.  They proceeded to discharge the duty thus imposed upon them, and paid dividends from time to time on account of the indebtedness of the company, amounting in all to fifty per cent. of its indebtedness, the last dividend being paid on the 30th of November, 1885.  In November, 1891, and before the expiration of six years from

---

[1] See *Osborn* v. *Colwell*, 17 R. I. 196.

[2] As follows :

SEC. 2.  All persons having claims or accounts against the said insolvent debtor shall present the said claims or accounts to the said assignee within six months from the date of the published notice of said assignment, and all claims or accounts not presented to said assignee within said period of six months shall not after that time be a claim against said assignee: *Provided,* That any time before the said assignee shall have paid a dividend or made payment to any creditor in settlement or liquidation of said assigned estate, any such creditor may prove his claim and share in any dividend.

the date of the payment of said last dividend, all of the respondents, except Alfred E. Tenney, assignee, sued out their several writs of attachment and summons against the company upon their respective claims, and subsequently reduced the same to judgments. On the 27th day of November, 1891, which was subsequent to the making of said attachments, the company made and executed an assignment for the benefit of its creditors, of all of its property and estate to the respondent Tenney, in accordance with the provisions of Pub. Stat. R. I. cap. 237, whereby such attachments were dissolved. The complainants presented their claims to the assignee within six months from the date of the published notice of said assignment, but, though having assets of said company in his hands for distribution, he has refused to recognize the complainants as creditors under said deed of assignment, alleging as his reasons therefor that he has been notified by the other respondents that only those creditors of said company who commenced their actions against it prior to the expiration of six years after said 30th day of November, 1885, and reduced their claims to judgments as aforesaid, are entitled to any dividends out of the estate now in his hands. The assignee has never paid any dividend from the assigned estate. The answer sets up that said company was compelled to put its affairs into the hands of said committee or be forced into making a general assignment for its creditors, and that therefore the act of putting its affairs into the hands of said committee was not voluntary but under duress, and hence the dividends declared and paid were not the voluntary acts of said company, and did not, therefore, operate as part payments to take the claims of creditors out of the statute of limitations, but that all the claims against said company, except those reduced to judgment, were outlawed in the year 1888 or 1889. In the circumstances above set out, then, are the complainants' claims enforceable? Or, to state the question differently, are said claims outlawed? If they are, the complainants have no standing in court; but if they are not, the complainants are entitled to the relief prayed for in their bill.

Part payment of a debt, where made by the debtor or by his agent thereunto lawfully authorized, within six years from the time when such debt was incurred, ordinarily operates as a new promise, and takes the debt out of the statute of limitations. That is, it gives it a new lease of life for another period of six years. In the case at bar there is no dispute as to the fact that part payments were made to the complainants on account of their respective claims, within six years from the time they were incurred, respectively, but it is urged by the respondents' counsel that such payments were not the "voluntary acts of said company," and therefore did not operate to take said claims out of the statute. Just what is meant in this connection by the "*voluntary acts of said company*" is not entirely clear. If counsel intend to claim that unless a payment is made willingly or from choice without any constraint from circumstances, it does not have the effect of a new promise, his position is wholly untenable. For it is a matter of common knowledge that debtors are daily making unwilling, if not practically forced, payments to their creditors to preserve their credit or to prevent threatened attachments or proceedings in insolvency, and we are not aware that any court has ever decided that payments so made are not as effectual to discharge the debt, or take the claim out of the statute of limitations, as the case may be, as if made without any solicitation or urgency whatsoever. In short, we have always supposed that creditors could employ all proper and lawful means to collect their just dues, and that the payment, either in part or in whole, of a lawful debt, whether made willingly or unwillingly, has the same legal effect.

But respondents' counsel further contend that said turning over of the administration of the affairs of said company was not voluntary but under duress. This contention is also untenable. Duress exists when one by the unlawful act of another is induced to perform some act under circumstances which deprive him of the exercise of free will. *Hackley* v. *Headley*, 45 Mich. 569. Bouvier defines duress as "An actual or a threatened violence or restraint of a man's person, con-

trary to law, to compel him to enter into a contract, or to discharge one." But he subsequently states that "If the violence used be only a legal constraint, or the threats only of doing that which the party using them had a right to do, they shall not invalidate the contract. A just and legal imprisonment, or threats of any measure authorized by law and the circumstances of the case, are of this description." See *Watkins* v. *Baird*, 6 Mass. 506. It follows, therefore, that compulsion is not necessarily duress. Imprisonment even, if lawful and unaccompanied with circumstances of unnecessary pain, privation or danger, is not such duress as will avoid a contract or other act done by one thus restrained of his liberty. See *M'Crillis* v. *Sisson*, 1 R. I. 143. "Duress by threats," says Mr. Parsons in his work on Contracts, Vol. 1, 8th ed. *393, "does not exist wherever a party has entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong; as of death, or great bodily injury, or unlawful imprisonment." The ordinary test as to whether money is paid under duress is whether the party so paying it can maintain an action to recover it. And we presume that no lawyer would for a moment contend that the Providence Tool Company could maintain such an action in regard to the payments made to its creditors in the manner aforesaid.

For a collection of the cases in support of the position we have taken, see 6 Amer. & Eng. Encyc. Law, 57-8, caption in note, *"Duress Per Minas."*

We therefore decide that the complainants are entitled to share equally with all the other creditors of said company in proportion to their respective claims in the property and estate now held in trust by said Tenney, assignee.

*John D. Thurston*, for complainants.

*Richard B. Comstock & Rathbone Gardner*, for respondent American National Bank.

*Thomas C. Greene & Benjamin W. Smith*, for respondent National Exchange Bank.

*Alfred E. Tenney*, respondent assignee, *pro se ipso.*