**Supreme Court**
No. 2023-138-Appeal.

Babajide Adebamowo et al.        :

v.        :

Liberty Insurance Corporation.        :

# O R D E R

The plaintiffs, Ms. Babajide Adebamowo and Mr. Olabisi Adebamowo, appearing before this Court as self-represented litigants, appeal from a December 2, 2022 order of the Superior Court (1) granting the motion of the defendant Liberty Insurance Corporation (Liberty) to enforce a settlement agreement; and (2) ordering the plaintiffs to execute both a release of all claims and a dismissal stipulation in accordance with the settlement agreement. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we vacate the December 2, 2022 order of the Superior Court, and we remand this case to that court

for further proceedings consistent with this order.

The plaintiffs filed an insurance claim with Liberty following a January 20, 2013 fire at their home. Although Liberty has asserted that it approved a payment to plaintiffs "in excess of $1.2 million," that amount was less than the full amount sought by plaintiffs. Counsel for plaintiffs filed a complaint in the Superior Court for Providence County on January 16, 2015. The complaint was amended on June 15, 2015, and it alleged that Liberty's refusal to reimburse plaintiffs for certain damages and the full amount of their rental costs amounted to a breach of contract; a breach of the covenant of good faith and fair dealing; and bad faith refusal to settle a claim in violation of G.L. 1956 § 9-1-33.

Several years later, the parties agreed to engage in mediation; that mediation took place on June 15, 2022. According to Liberty's submission to the Superior Court, plaintiffs sought an additional amount "somewhere around $360,000." At the end of a full-day mediation session (at which plaintiffs were represented by counsel), plaintiffs and Liberty signed a settlement agreement. The pertinent terms of that settlement agreement provided (1) that the pending civil action would be dismissed with prejudice and without interest or costs; (2) that Liberty would pay plaintiffs $190,000 "for all claims and damages" associated with that civil action; and (3) that plaintiffs would provide Liberty with a "full and complete release."

Liberty filed a motion to enforce the settlement agreement, contending that

plaintiffs had failed to provide the promised documentation. The plaintiffs did not file a response to the motion to enforce.

On November 28, 2022, a hearing was held on the motion to enforce the settlement agreement, at the conclusion of which the hearing justice granted the motion. The hearing justice stated: "As it stands now, [the settlement agreement] is an enforceable agreement, signed and entered into by [plaintiffs]." On December 2, 2022, an order entered, reflecting the grant of the motion and requiring plaintiffs to execute both the release and the dismissal stipulation. A timely appeal ensued.

Among the plaintiffs' contentions in their appeal to this Court is an assertion that, before ruling on Liberty's motion to enforce the signed settlement agreement, the hearing justice "did not allow [them] to present [their] case * * *." We have carefully scrutinized the transcript of what took place during the hearing in the Superior Court, and we have concluded (although it is an exceedingly close question) that the plaintiffs' argument in this regard is not entirely baseless. Accordingly, we have decided to remand this matter to the Superior Court so that the plaintiffs may have a further opportunity "to present [their] case" as to why the signed settlement agreement at issue should not be enforced as written.

Accordingly, we vacate the December 2, 2022 order of the Superior Court, and we remand this matter to the Superior Court for it to promptly conduct

proceedings limited to the issue referenced to in the preceding paragraph. The record may be returned to that tribunal.

Entered as an Order of this Court this   24th   day of July 2024.

By Order,

/s/ Meredith A. Benoit, Clerk
_____
Clerk

Justice Lynch Prata did not participate.

**Justice Long, dissenting.**   I dissent from the decision vacating the December 2, 2022 order of the Superior Court and remanding this matter for further proceedings.

This appeal compels consideration of a straightforward legal question: Whether the hearing justice erred in enforcing the June 15, 2022 settlement agreement signed by the parties at the end of a full-day mediation session. This Court's task in analyzing this question is also straightforward, as Liberty Insurance Corporation (Liberty) correctly points out in citing to *Furtado v. Goncalves*, 63 A.3d 533 (R.I. 2013):

> "We have previously treated settlement agreements as we
> do any other type of contract, applying our general rules

of contract construction. *See, e.g.*, *Rivera v. Gagnon*, 847 A.2d 280, 282, 284 (R.I. 2004) (applying contract construction rules when interpreting settlement agreements). '[T]he existence of ambiguity *vel non* in a contract is an issue of law to be determined by the [C]ourt.' *Derderian v. Essex Insurance Co.*, 44 A.3d 122, 127 (R.I. 2012) (quoting *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I. 2011)). 'When a contract is unambiguous, we review its terms in a *de novo* manner.' *Id.* (quoting *Papudesu*, 18 A.3d at 498). In assessing whether contract language is ambiguous, 'we give words their plain, ordinary, and usual meaning. * * * The subjective intent of the parties may not properly be considered by the Court; rather, we consider the intent expressed by the language of the contract.' *Id.* at 128 (quoting *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083-84 (R.I. 2010)). Thus, when a contract is clear and unambiguous by its terms, 'what is claimed to have been the subjective intent of the parties is of no moment.' *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 560 (R.I. 2009). Finally, '[i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.' *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I. 2004) (quoting *Clark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I. 1994))." *Furtado*, 63 A.3d at 537 (emphasis omitted).

The relevant and undisputed terms in the unambiguous settlement agreement at issue were, as the majority sets forth in this order, (1) that the pending civil action would be dismissed with prejudice and without interest or costs; (2) that Liberty would pay plaintiffs $190,000 "for all claims and damages" associated with that civil action; and (3) that plaintiffs would provide Liberty with a "full and complete

release." Moreover, pursuant to the language in the settlement agreement, plaintiffs acknowledged that "it is the intention of the parties that this agreement is and will be binding."

The June 15, 2022 settlement agreement has "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *West Davisville Realty Co., LLC v. Alpha Nutrition, Inc.*, 182 A.3d 46, 52 (R.I. 2018) (emphasis omitted) (quoting *Andoscia v. Town of North Smithfield*, 159 A.3d 79, 82 (R.I. 2017)). Additionally, the parties manifested an intention to be bound. *See Mendes v. Kirshenbaum & Kirshenbaum Attorneys at Law, Inc.*, 309 A.3d 1176, 1180 (R.I. 2024). In short, after undertaking a straightforward analysis of the undisputed and unambiguous language of the June 15, 2022 settlement agreement, it is clearly a binding contract.

What is much less straightforward and, in my view, much more concerning, is how plaintiffs indicate that they perceived their treatment in our legal system. In their telling, the case that the hearing justice did not allow them to present included (1) a letter they received from their own attorney implying that if they go to trial, they will not receive a fair trial because of their race; and (2) evidence that the $1.2 million payment did not cover the loss suffered, and that alleged delays by Liberty compounded their loss. The plaintiffs also assert that the hearing justice did not address the coercion that they believed they faced at the full-day mediation session.

The transcript of the November 28, 2022 hearing on the motion to enforce the settlement agreement reveals that both plaintiffs attempted to articulate their opposition to the motion. Mr. Adebamowo spoke first, explaining that plaintiffs felt pressured to sign the settlement agreement and that they had a letter from their attorney indicating that race would be a factor in a trial; he stated that plaintiffs wanted an opportunity to have a trial because the settlement amount was significantly less than their losses. Mrs. Adebamowo also spoke at the hearing. She disputed the $1.2 million payment and also referenced the letter from their attorney in attempting to explain that they felt coerced into signing the settlement agreement.[1]

The hearing justice interrupted Mrs. Adebamowo as she argued that the payment from Liberty was not sufficient:

> "All right. All right. You're not a lawyer. Based upon what is before me now, we have an Agreement that was signed and entered into, by you. It was your signature on them. It was entered into after a day of mediation. I'm going to grant the Motion to Enforce the Judgment, and if you want to do something after that, you have a whole process to do that. I would suggest to you that you get an attorney. There has to be a reason why your attorney withdrew from the matter. As it stands now, it is an enforceable agreement, signed and entered into by you. You've got a significant amount of money that you were looking for."

[1] Mrs. Adebamowo said, "[T]his is the letter to show we needed to show our proof to tell us we cannot get anything because of race. Race has nothing to do with it -- when we paid the insurance company for how many years." The letter is not part of the record; however, plaintiffs attached to their prebriefing statement a copy of a letter that appears to be from their former attorney.

With that statement and after signing the December 2, 2022 order, the hearing justice disposed of the motion to enforce the settlement agreement. The granting of the motion to enforce the settlement agreement is consistent with the law; as such, there is no legal error.

However, I believe that the hearing justice unfortunately missed an important opportunity to observe procedural fairness during the hearing on the motion to enforce the settlement agreement.[2] He likely had a busy calendar with many self-represented litigants appearing before him that morning;[3] that environment certainly presents challenges. Nevertheless, in my opinion, the arguments that plaintiffs attempted to articulate go to the heart of the legitimacy of our legal system and the question of whether their case would be considered without regard to their race; and the arguments should have been acknowledged and addressed.

---

[2] "Judges can alleviate much of the public dissatisfaction with the judicial branch by paying critical attention to the key elements of procedural fairness: voice, neutrality, respectful treatment, and engendering trust in authorities." Kevin Burke & Steve Leben, *Procedural Fairness: A Key Ingredient in Public Satisfaction*, 44 Ct. Rev. 4, 4 (2007). A 2019 publication of the Institute for the Advancement of the American Legal System provides further information about procedural fairness and offers helpful guidance for trial courts that confront increasing numbers of self-represented litigants. John Greacen & Michael Houlberg, *Ensuring the Right to Be Heard: Guidance for Trial Judges in Cases Involving Self-Represented Litigants*, Institute for the Advancement of the American Legal System, 9 (2019). It also references additional training materials from various sources, including the National Judicial College and the National Center for State Courts. *Id.* at 10-16.

[3] The docket and transcript reflect that the hearing justice was presiding over the morning session of the formal and special cause calendar on November 28, 2022.

- 8 -

"[D]uress exists when one by the *unlawful act* of another is induced to perform some act under circumstances which deprive him of the exercise of free will." *Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 342 (R.I. 2015) (quoting *Peabody v. Tenney*, 18 R.I. 498, 502, 30 A. 456, 457 (1893)). "Duress is not shown by the fact that one was subjected to * * * personal embarrassment, a difficult bargaining position or the pressure of financial circumstances." *Id.* at 343 (quoting *Pierce v. Atchison, Topeka and Santa Fe Railway Co.*, 65 F.3d 562, 569 (7th Cir. 1995)). "Further, 'one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement.'" *Id.* (quoting *Pierce*, 65 F.3d at 569).

What plaintiffs suggest that their attorney told them—that race might be a factor at trial—is, in my view, a tragic, heartbreaking, and inaccurate assessment of a risk that plaintiffs might have faced if they decided to go to trial.[4] However, even

---

[4] I do not dismiss or minimize any concerns that plaintiffs' former attorney might have had about the potential role that implicit biases might play in decision making. Implicit biases are an example of information-processing patterns—schemas—that occur when individuals engage in rapid, reflexive thinking. *See* Pamela Casey, Kevin Burke & Steve Leben, *Minding the Court: Enhancing the Decision-Making Process* 5-7 (2012). While explicit biases are overt and easily perceptible, implicit biases reflect unconscious manifestations of our conditioned associations, stereotypes, and attitudes toward certain people or groups. Katheryn Yetter & Brian Lee, *Judging the Book by More Than Its Cover: A Symposium on Juries, Implicit Bias, and the Justice System's Response*, National Judicial College, 2 (2021). Social and neuroscience research regarding action steps for curtailing the impact of implicit bias is ongoing, but a peer-reviewed systematic analysis of studies discussing effective debiasing strategies indicates that individuals can overcome implicit biases

if sincerely believed, the attorney's statement simply did not meet the definition of duress or coercion under Rhode Island law; and plaintiffs' arguments, though ultimately unsuccessful, deserved attention. One can accept that plaintiffs genuinely felt pressure on June 15, 2022; they undoubtedly faced a difficult choice at the end of the full-day mediation session. Nine and one-half years after suffering a loss from a fire in their home, which plaintiffs alleged had displaced them for more than a year without full reimbursement and had further led to the misplacement and loss of many of their belongings, plaintiffs' attorney seemingly advised that the best resolution of their case would be to settle the dispute for an amount that they deemed inadequate. They perceived that their attorney discouraged them from going to trial and presenting evidence of their losses because of what they (understandably) believed was a wholly inappropriate reason. However, notwithstanding the pressure they

---

with education and vigilance. *See* Tiffany S. Doherty & Aaron E. Carroll, *Believing in Overcoming Cognitive Biases*, 22 AMA J. Ethics 773, 776 (2020); *see also* Casey et al., *supra*, at 19-27; Jennifer K. Elek & Paula Hannaford-Agor, 51 Ct. Rev. 116 (2015); Jerry Kang, *What Judges Can Do About Implicit Bias,* 57 Ct. Rev. 78 (2021). Furthermore, anecdotal and peer-reviewed data suggests that jury diversity may also be a vehicle for reducing the effects of implicit biases. Jerry Kang et al., *Implicit Bias in the Courtroom*, 59 UCLA L. Rev. 1124, 1180 (2012); Samuel R. Sommers, *On Racial Diversity and Group Decision Making: Identifying Multiple Effects of Racial Composition on Jury Deliberations*, 90 J. Personality & Soc. Psych. 597, 606-09 (2006). *Achieving an Impartial Jury*, a project of the American Bar Association, provides resources for reducing the role of implicit bias in the American jury system. American Bar Association, *Achieving an Impartial Jury*, https://www.americanbar.org/content/dam/aba/publications/criminaljustice/voirdire_toolchest.pdf (last visited June 5, 2024).

undoubtedly felt under those circumstances, plaintiffs were not bound to accept

Liberty's reduced dollar amount or to release Liberty from liability until the moment

they signed the settlement agreement.

By not listening fully to or acknowledging the plaintiffs' arguments; and by

not explaining the law and why the plaintiffs' arguments are unavailing,

notwithstanding the long travel of the case and the very unfortunate introduction of

a racial component to the case, the hearing justice missed an opportunity to affirm

the fundamental principle that the law applies to litigants *without* regard to race.[5]

I respectfully dissent from the order to vacate the December 2, 2022 order and

remand this matter "so that the plaintiffs may have a further opportunity" to repeat

their arguments, albeit without interruption the second time that they appear in

Superior Court. The plaintiffs articulated their arguments in their prebriefing

---

[5] I echo Judges Burke and Leben, whose extensive research led them to write the following:

> "While people with different ethnic and racial backgrounds differ in the degree to which they have trust and confidence in the legal system, people are concerned about fair procedures irrespective of their ethnicity and economic status and are willing to defer to a court's judgment if procedural fairness exists. Procedural fairness is the primary factor that shapes perceptions of the judicial system. However, since African-Americans perceive less fairness, it is critical to focus on what alleviates or aggravates that difference." Burke & Leben, *Procedural Fairness*, 44 Ct. Rev. at 17 (footnotes omitted).

statement and at oral argument; review of the record reveals that the law compels the granting of the motion to enforce the June 15, 2022 settlement agreement signed by the parties to this dispute.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

### ORDER COVER SHEET

| | | |
|---|---|---|
| **Title of Case** | Babajide Adebamowo et al. v. Liberty Insurance Corporation. | |
| **Case Number** | No. 2023-138-Appeal. (PC 15-233) | |
| **Date Order Filed** | July 24, 2024 | |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. | |
| **Source of Appeal** | Providence County Superior Court | |
| **Judicial Officer from Lower Court** | Associate Justice R. David Cruise | |
| **Attorney(s) on Appeal** | For Plaintiffs: Babajide Adebamowo, *pro se* Olabisi Adebamowo, *pro se* | |
| | For Defendant: Clark Yudysky, Esq. | |